# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

KIRK E. WEBSTER, SR., *et al.*,  )
    Plaintiffs,  )
        )
v.  )    Civil No. 1:20-cv-9
        )
MARK ESPER,  )
Secretary of Defense, *et al.*,  )
    Defendants.  )

## MEMORANDUM OPINION

This matter comes before the Court on defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.[1] Plaintiffs, Kirk Webster and his wife Katrina Webster, proceeding *pro se*, have alleged claims of race and age discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). Plaintiffs' complaint primarily alleges decades of discriminatory treatment by Mr. Webster's employer prior to his retirement in June 2012 and seeks to litigate the revocation of his security clearance in February 2012 and the two-hundred-plus EEO claims he filed against his employer prior to June 2012. Defendants argue that plaintiffs have failed to allege any plausible claim for relief and that plaintiffs' claims are precluded (i) by the terms of a settlement agreement, (ii) by the doctrine of collateral estoppel, and (iii) by the rule against claim-splitting. A hearing on this matter was held on February 28, 2020. At the hearing, counsel for the government and both *pro se* plaintiffs appeared and orally argued their positions passionately. Thus the matter is ripe for disposition.

For the reasons that follow, defendants' motion must be granted, and all of plaintiffs'

---

[1] The defendants in this case are Mark Esper, the Secretary of Defense, and the National Geospatial Intelligence Agency ("NGA").

claims must be dismissed.

## I.

To begin with, it is necessary to set forth the lengthy procedural and factual history pertinent to this case.[2] Plaintiff Kirk Webster worked for the National Geospatial Intelligence Agency ("NGA"), a component of the Department of Defense, for over twenty years. In February 2012, NGA permanently revoked Mr. Webster's security clearance, which plaintiffs allege was the result of NGA's retaliatory actions in response to Mr. Webster's protected Title VII activity.[3]

After revocation of his security clearance, Mr. Webster entered into a settlement agreement with NGA in June 2012 (the "2012 Settlement Agreement"). The 2012 Settlement Agreement provided that NGA shall approve Mr. Webster for Voluntary Early Retirement Authority ("VERA") and for Voluntary Separation Incentive Pay ("VSIP"). In exchange, Mr. Webster released NGA from any and all claims that Mr. Webster had or could have had against NGA related to his employment prior to the execution of the agreement. Specifically, Section 2 of the 2012 Settlement Agreement stated:

> (B) [Mr. Webster] understands and agrees that this Settlement Agreement resolves any and all claims of any nature that he has brought, or may have against the [NGA] (including its employees, officers, agents and subrogees) with respect to any actions occurring prior to the date of this Agreement, whether currently known or unknown...

---

[2] The facts set forth here are derived from plaintiffs' complaint, materials incorporated into the complaint by reference, and the Court's docket. *See Goines v. Valley Comm. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (a district court may consider materials incorporated by reference into a complaint without converting a motion to dismiss pursuant to Rule 12(b)(6) into a motion for summary judgment); *Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006) (a district court may take judicial notice of facts from a prior judicial proceeding when analyzing a motion to dismiss on the ground of *res judicata* and collateral estoppel).

[3] In February 2012, NGA told Mr. Webster that it was revoking his security clearance because plaintiffs' financial difficulties had caused them to file bankruptcy. Defendants maintain that plaintiffs' bankruptcy was the reason Mr. Webster's security clearance was revoked.

2

> (i) that were asserted or could have been asserted in any previous EEO complaints, OFO appeals, MSPB appeals, Office of Special Counsel complaints, and/or state and federal proceedings;
>
> (ii) that arose from or are related to [Mr. Webster's] employment at NGA;
>
> (iii) that are otherwise based on any act or omission relating to [Mr. Webster's] employment with NGA.
>
> (C) [Mr. Webster] agrees not to file any new claim, grievance, complaint, or lawsuit of any type, in any forum, under any federal or state statute or regulation, against the [NGA], its employees, agents, or subrogees arising from the issues raised in any of his previous complaints, OFO appeals, federal court litigation, OSC complaints, and MSPB appeals. It is the express intent of all parties to end all litigation that has been brought by [Mr. Webster], or could have been brought by [Mr. Webster] at the time of this agreement.

Exhibit A, Dkt. 21-1, at 2-3.

In October 2016, over four years after the execution of the 2012 Settlement Agreement, Mr. Webster filed a civil action in the United States District Court for the District of Columbia ("*Webster I*"), alleging that the 2012 Settlement Agreement is legally invalid because Mr. Webster executed it under duress, that NGA had breached the underlying settlement agreement, and that his underlying EEO complaints should be reinstated pursuant to 29 C.F.R. § 1614.504(a). On December 6, 2017, *Webster I* was transferred to the Eastern District of Virginia on venue grounds pursuant to 28 U.S.C. § 1406(a). On January 8, 2018, the defendant in that case, the Secretary of Defense, filed a motion to dismiss for lack of subject matter jurisdiction. On February 15, 2018, the magistrate judge issued a Report and Recommendation, which recommended granting defendant's motion to dismiss because well-settled Fourth Circuit authority holds that Title VII's waiver of sovereign immunity does not extend to "monetary claims against the government for breach of a settlement agreement that resolves a Title VII dispute." *Frahm v. United States*, 492 F.3d 258, 262 (4th Cir. 2007). On February 27, 2018, after Mr. Webster filed timely objections, this Court adopted the findings of fact and

recommendations set forth in the magistrate judge's Report and Recommendation and dismissed Mr. Webster's complaint for lack of subject matter jurisdiction. *See* Civil Case No. 1:17-cv-01384, Dkt. 59 (E.D. Va. Feb. 27, 2018). Mr. Webster appealed this Order, and the Fourth Circuit affirmed the district court's ruling. *See Webster v. Mattis*, 731 Fed. App'x. 214 (4th Cir. 2018) (per curiam), *cert. denied*, 139 S. Ct. 1239 (2019). The Supreme Court denied Mr. Webster's petition for a writ of certiorari.

On July 26, 2019, Mr. Webster and his wife, Katrina Webster, acting *pro se*, filed the instant complaint in the United States District Court for the District of Columbia ("*Webster II*"). On January 6, 2020, *Webster II* was transferred to the Eastern District of Virginia on venue grounds pursuant to 28 U.S.C. § 1406(a). Plaintiffs' complaint in this case contains many of the same allegations as the complaint in *Webster I*, namely that NGA breached the 2012 Settlement Agreement and that Mr. Webster's prior EEO complaints should be reinstated.

Although the complaint and its attachments are prolix and not entirely clear, plaintiffs have presented some new evidence to support Mr. Webster's previously filed EEO complaints.[4] In this respect, the complaint alleges that Mr. Webster read 2018 media coverage about the results of a self-study that NGA conducted into its promotion process, which conclusively proves, according to Mr. Webster, that he was not promoted during his tenure at NGA due to intentional discriminatory animus.[5] After reading this media coverage of NGA's self-study

---

[4] Because the complaint is a *pro se* pleading, it has been liberally construed in accordance with well-settled authority. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

[5] In fact, NGA's self-study report, which plaintiffs attached to the complaint, concluded that between "2009 and 2014, [b]lack and [w]hite promotion rates at NGA fluctuate[d] year to year, with neither demographic having a consistently higher or lower rate than the others," and that it was not until NGA implemented a new promotion system in 2014 that black promotion rates at the agency began trending lower than white promotion rates. Dkt. 1-1, at 71, 61. Mr. Webster retired from NGA in June 2012. Thus, the conclusion of NGA's self-study report that the promotion system implemented by NGA in 2014 led to a reduction in the promotion of black employees as compared to white employees does not apply to Mr. Webster because he retired from NGA two years prior to the

4

report, Mr. Webster sent an email to NGA's Office of Diversity Management and Equal Employment Opportunity ("NGA EEO") on September 20, 2018, allegedly to commence the process of filing a new administrative complaint that would revive his prior administrative complaints of discrimination and failure to promote.[6] The complaint in this case alleges that NGA EEO officials refused to process Mr. Webster's September 2018 EEOC claims.

Thus, in addition to raising the same claims raised in *Webster I*, the complaint in this case seeks (i) to hold NGA liable pursuant to Title VII based on NGA EEO's alleged failure to process Mr. Webster's September 2018 EEO complaint, (ii) to hold NGA liable for a similar alleged failure to process Title VII allegations made by Mrs. Webster back in 2002, (iii) to litigate Mr. Webster's prior administrative complaints against NGA related to discrimination, retaliation, and failure to promote because of the conclusions in NGA's recent self-study report, and (iv) to hold NGA liable for colluding with Mrs. Webster's current employer, a component of the Department of the Navy, to take certain employment actions against her in retaliation for her protected EEO activity.

## II.

The well-settled motion to dismiss standard applicable here does not require extensive elaboration. As the Supreme Court has made clear, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Importantly, in making this determination the district court must

---

change in the promotion system. NGA's self-study report only covers four years during which Mr. Webster worked at NGA (2009-2012), and the report specifically found that black and white employees did not have consistently higher or lower promotion rates than the other demographic during those years.

[6] The complaint alleges that Mr. Webster filed over two hundred prior EEO complaints against NGA during his tenure as an employee.

"accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). But the district court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Instead, the complaint must allege facts that, if true, plausibly satisfy each element of the claims for which relief is sought. Accordingly, the motion to dismiss must be granted if the complaint does not allege a sufficient factual basis to create a plausible inference that plaintiff is entitled to relief.

It is also true that an action must be dismissed pursuant to Rule 12(b)(1) when a district court lacks subject matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006). Federal district courts are courts of limited jurisdiction, possessing only the jurisdiction granted by the U.S. Constitution and by federal statute. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). The plaintiff bears the burden of establishing the district court's subject matter jurisdiction. *Strawn v. AT&T Mobility*, 530 F.3d 293, 296 (4th Cir. 2008). Accordingly, the motion to dismiss must be granted if the plaintiff has not established that there is subject matter jurisdiction to hear a claim.

### III.

As an initial matter, plaintiffs seek monetary relief based upon the alleged failure of NGA EEO to process in an appropriate and timely manner both Mr. Webster's 2018 employment discrimination and retaliation allegations and Mrs. Webster's 2002 employment discrimination allegation. Because federal anti-discrimination statutes do not create a cause of action based on allegations that a federal agency has improperly processed administrative complaints, plaintiffs'

claims related to NGA's alleged failure to process their EEO complaints must be dismissed.

Title VII only creates a cause of action for discrimination. Well-settled authority holds that Title VII "does not create a cause of action for the mishandling of an employee's discrimination complaints." *Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990), *aff'd*, 946 F.2d 1568 (D.C. Cir. 1991) (citing *McCottrell v. E.E.O.C.*, 726 F.2d 350, 351 (7th Cir. 1984); *Ward v. E.E.O.C.*, 719 F.2d 311, 313 (9th Cir. 1983), *cert. denied*, 466 U.S. 953 (1984); *Gibson v. Missouri Pac. R. Co.*, 579 F.2d 890, 891 (5th Cir. 1978), *cert. denied*, 440 U.S. 921 (1979)); *see also Mallik v. Sebelius*, 964 F. Supp. 2d 531, 538 (D. Md. 2013). Moreover, federal EEOC regulations require the dismissal of complaints that solely allege "dissatisfaction with the processing of a previously filed complaint." 29 C.F.R. § 1614.107(a)(8). Accordingly, plaintiffs' claims related to NGA's alleged failure to process their EEO complaints must be dismissed because failure to process claims are not cognizable claims under Title VII.

Even assuming, *arguendo*, that Title VII provided a cause of action for failure to process plaintiffs' EEO complaints (which it does not), plaintiffs' claims must nonetheless be dismissed because plaintiffs do not allege that any adverse employment action occurred as a result of the failure to process their EEO complaints. An adverse employment action is a discriminatory act which "adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal quotation marks and citations omitted). Here, Mr. Webster voluntarily retired from NGA in June 2012 pursuant to the terms of the 2012 Settlement Agreement. Thus, any alleged failure to process his September 2018 EEO complaint could not have caused an adverse employment action because Mr. Webster was not employed by NGA in September 2018; he had been retired since 2012.[7]

---

[7] In other words, any alleged adverse employment action would have occurred when Mr. Webster was employed by

7

In sum, plaintiffs' claims related to NGA's alleged failure to process their EEO complaints must be dismissed because failure to process claims are not cognizable under Title VII. And even if it were a cognizable claim, plaintiffs have failed to allege facts sufficient to raise a plausible inference that each element of a Title VII claim can be satisfied here. Accordingly, plaintiffs' claims related to NGA's alleged failure to process their EEO complaints must be dismissed.

## IV.

Although Title VII does not provide a cause of action for the alleged mishandling of an employee's discrimination complaint, it does provide a cause of action for discrimination. In this respect, the complaint seeks to litigate all of Mr. Webster's prior administrative complaints against NGA of discrimination, retaliation, and failure to promote because of the conclusions in NGA's recent self-study report.[8] Because the 2012 Settlement Agreement unambiguously waived Mr. Webster's right to litigate any of these claims in any subsequent proceeding, all discrimination claims related to Mr. Webster's administrative complaints made during his employment with NGA must be dismissed with prejudice.

Title VII of the Civil Rights Act of 1964 protects employees from harms caused by an employer's discriminatory or retaliatory actions. Although litigation of such claims remains the ultimate option, the statute itself selected "[c]ooperation and voluntary compliance" as the "preferred means" for eliminating unlawful discrimination. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44 (1974). To that end, Congress created the Equal Employment Opportunity

---

NGA prior to 2012. Mr. Webster's 2018 EEO complaint cannot allege an adverse employment action because he was not employed at NGA at that time. Instead, the 2018 EEO complaint seeks to raise his pre-June 2012 EEO complaints based off his interpretation of media reports on NGA's recent self-study.

[8] This section puts aside the fact that the conclusions in NGA's recent self-study report do not apply to Mr. Webster because those specific conclusions pertain to a new promotion system implemented by NGA in 2014, two years after Mr. Webster retired from NGA.

Commission ("EEOC") as a mechanism "to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit." *Id.* Waiver of Title VII claims through settlement, therefore, is authorized, provided the waiver is knowing, voluntary, and part of a bargain that resolves the underlying employment discrimination dispute. *See id.* at 52 & n. 15; *Keith v. Aldridge*, 900 F.2d 736, 741 (4th Cir. 1990).

With respect to the waiver of Title VII claims through settlement, the Fourth Circuit has made abundantly clear that "[s]ettlement agreements operate on contract principles, and thus the preclusive effect of a settlement agreement should be measured by the intent of the parties." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 211 (4th Cir. 2009). And "[w]here the parties' intent is clear from the unambiguous terms of the contract, construed as a whole, [the court] need not and cannot resort to extrinsic evidence of intent." *See Bala v. Com. of Virginia Dep't of Conservation & Recreation*, 614 F. App'x 636, 639 (4th Cir. 2015) (citing *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993)).

The 2012 Settlement Agreement stated plainly that:

> [T]his Settlement Agreement resolves any and all claims of any nature that [Mr. Webster] has brought, or may have against the [NGA]... with respect to any actions occurring prior to the date of this Agreement, whether currently known or unknown...that were asserted or could have been asserted in any previous EEO complaints...[or] that arose from or are related to [Mr. Webster's] employment at NGA.

Accordingly, there can be no doubt that the 2012 Settlement Agreement addressed and resolved Mr. Webster's EEO complaints made prior to June 2012 as well as any future litigation related to Mr. Webster's employment at NGA prior to June 2012. All of the claims that plaintiffs seek to bring in this civil action relate to claims Mr. Webster either previously asserted against NGA before the execution of the 2012 Settlement Agreement or related to Mr. Webster's employment at NGA prior to June 2012. Thus, plaintiffs are precluded from bringing these claims now in

order to achieve a second bite at the apple.[9]

Moreover, any argument that defendants breached the 2012 Settlement Agreement or that the 2012 Settlement Agreement is invalid is foreclosed by the doctrine of collateral estoppel.[10] Mr. Webster litigated and lost on those exact issues in *Webster I*. Well-settled authority establishes that application of the collateral estoppel doctrine requires the demonstration of the following elements:

> (1) that the issue sought to be precluded is identical to one previously litigated...; (2) that the issue was actually determined in the prior proceeding...; (3) that the issue's determination was a critical and necessary part of the decision in the prior proceeding...; (4) that the prior judgment is final and valid...; and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum.

*Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217–18 (4th Cir. 2006). Here, all five elements are clearly met. First, the breach of settlement contract issue was the exact issue litigated in *Webster I*. Second and third, *Webster I* held that the Court lacked subject matter jurisdiction over plaintiff's claims related to breach of the 2012 Settlement Agreement because Title VII had not waived sovereign immunity with respect to those claims. Fourth, the Fourth Circuit affirmed the

---

[9] Put simply, Title VII provides a cause of action against one's employer; Mr. Webster has not been employed by NGA since June 2012; and the 2012 Settlement Agreement that Mr. Webster executed in exchange for his retirement and severance package waived his right to litigate claims that arose out of any action taken by NGA related to Mr. Webster's employment prior to that date.

[10] *See Barna Conshipping, S.L. v. 2,000 Metric Tons, More or Less, of Abandoned Steel*, 410 F. App'x 716, 720 (4th Cir. 2011) ("Collateral estoppel may be applied to bar relitigation of issues of fact or of law including questions of subject-matter jurisdiction.") (citing *Muniz Cortes v. Intermedics, Inc.*, 229 F.3d 12, 14 (1st Cir. 2000)). Plaintiffs' renewed challenge to the 2012 Settlement Agreement is analyzed under the doctrine of collateral estoppel rather than the doctrine of *res judicata* because a jurisdictional dismissal does not constitute a judgment on the merits for the purposes of *res judicata*. *See Goldsmith v. Mayor & City Council of Baltimore*, 987 F.2d 1064, 1069 (4th Cir. 1993). That said, there is some Fourth Circuit authority which suggests that a jurisdictional decision based on sovereign immunity grounds, as was the decision in *Webster I*, does have *res judicata* effect. *See Chin-Young v. United States*, 774 F. App'x 106, 115 (4th Cir. 2019). Because collateral estoppel clearly precludes plaintiffs' challenges to the 2012 Settlement Agreement under well-settled Fourth Circuit authority and because plaintiffs' other claims fail for numerous other reasons, no opinion is expressed here as to whether *res judicata* applies where, as here, the prior decision, while jurisdictional, was based on sovereign immunity grounds.

dismissal of plaintiff's claims in *Webster I* for lack of subject matter jurisdiction. Fifth, there can be no doubt that Mr. Webster had a full and fair opportunity to litigate these issues as he appealed the case all the way to the Supreme Court.

In sum, all of plaintiffs' Title VII and ADEA claims that arose out of Mr. Webster's employment at NGA must be dismissed with prejudice because the 2012 Settlement Agreement precludes suit on any of those claims and plaintiffs are collaterally estopped from challenging the validity of the 2012 Settlement Agreement.[11]

## V.

The Title VII claim that plaintiffs most emphasize in their complaint is the claim that the revocation of Mr. Webster's security clearance was done in retaliation for his prior protected activity. As noted, this claim is clearly precluded by the terms of the 2012 Settlement Agreement, and moreover this claim has already been raised and rejected in *Webster I* and is therefore barred by the doctrine of collateral estoppel.[12] To avoid this conclusion, plaintiffs attempt to distinguish the current claim regarding the revocation of Mr. Webster's security clearance from the prior claim by alleging that Mr. Webster's revocation was discriminatory when compared to how Justin Poole and Ellen Ardrey were treated by NGA.[13] Plaintiffs'

---

[11] It is worth noting that the 2012 Settlement Agreement also included a provision explicitly waiving Mr. Webster's right to bring an ADEA claim that accrued prior to the execution of the agreement. *See* Exhibit A, Dkt. 21-1, at 3. Moreover, the gravamen of plaintiffs' ADEA claim appears to be that NGA failed to inform Mr. Webster of his potential eligibility for Discontinued Service Retirement (DSR) at the time that he entered the 2012 Settlement Agreement. In addition to this issue being precluded by the 2012 Settlement Agreement and precluded by the doctrine of collateral estoppel because of *Webster I*, plaintiffs have identified no legal basis for the argument that failure to inform an employee about the possibility of DSR is a violation of the ADEA, nor is there any legal basis for such a finding.

[12] *See* note 10 and accompanying text, *supra*.

[13] Plaintiffs compare the revocation of Mr. Webster's security clearance because plaintiffs filed for bankruptcy with the media reports of Justin Poole's personal misconduct and Ellen Ardrey's financial misconduct. Plaintiffs allege neither Justin Poole's nor Ellen Ardrey's security clearances were revoked as a result of their significantly more serious misconduct, and that proves that Mr. Webster's security clearance was revoked for discriminatory reasons.

argument in this respect plainly fails, however.

Even assuming, *arguendo*, that NGA's alleged treatment of Justin Poole and Ellen Ardrey was a basis for bringing this claim anew, which it clearly is not, well-settled Supreme Court and Fourth Circuit authority hold that federal courts do not have subject matter jurisdiction to review a federal agency's decision to deny or revoke a security clearance. *See Department of Navy v. Egan*, 484 U.S. 518, 528-30 (1988) (holding that separation of powers principles preclude administrative or judicial review of the substance of an underlying decision made by an Executive Branch agency to deny or revoke a security clearance); *Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996) (holding that *Egan* bars judicial review of Title VII claims arising out of security clearance decisions).

To avoid this conclusion, plaintiffs argued at the hearing on this matter that Title VII provides a cause of action when discrimination is alleged to be involved in the security clearance revocation process via the use of comparators. Well-settled Fourth Circuit law specifically forecloses that argument, however. As the Fourth Circuit has appropriately held, "a court should not be put in the position of second-guessing the discretionary judgment of an executive agency assessing national security risks." *Hegab v. Long*, 716 F.3d 790, 794 (4th Cir. 2013); *see also Kruise v. Fanning*, 214 F. Supp. 3d 520, 524 (E.D. Va. 2016), *aff'd sub nom. Kruise v. Speer*, 693 F. App'x 213 (4th Cir. 2017) (holding that Fourth Circuit precedent "bars judicial review of Title VII…claims arising out of security clearance decisions"). Plaintiffs' proposed use of comparators would require the second-guessing of a discretionary judgment made by an executive agency, a result specifically barred by Fourth Circuit precedent. Accordingly, plaintiffs' Title VII claim based on the revocation of Mr. Webster's security clearance must be dismissed for a multitude of independent reasons, including lack of subject matter jurisdiction.

## VI.

The complaint, construed liberally, also appears to allege that NGA colluded with Mrs. Webster's federal employer, the Department of the Navy, to have the Navy deny every application for promotion that Mrs. Webster submitted.[14] But Mrs. Webster currently has a pending civil action alleging non-selection for promotion by the Navy in the United States District Court for the District of Columbia. *See* Civil Action No. 1:17-cv-01472-DLF. Accordingly, this claim must be dismissed as an improper attempt at claim-splitting.

The Fourth Circuit has made clear that "[t]he rule against claim splitting prohibits a plaintiff from prosecuting [her] case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008). Ordinarily, the rule operates to prevent the filing of a new lawsuit after the court hearing the first lawsuit has denied leave to amend to add the claims later asserted in the second lawsuit. *See id.* Although no such ruling has yet issued in the parallel District of Columbia litigation, the same principle applies here, namely that plaintiff cannot seek to contravene a court's power to manage its docket by filing duplicative litigation elsewhere.

As relevant here, the rule against claim splitting operates like claim preclusion in that a second claim should be dismissed if it would be precluded were the first asserted claim reduced to a final judgment. *See Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011). Here, Mrs. Webster filed a failure to promote lawsuit in the District of Columbia in July 2017 against Navy and NGA officials. The claims in Mrs. Webster's July 2017 lawsuit arise out of the same series of transactions as those alleged in the instant complaint. Thus, a ruling on the merits of the

---

[14] This assumes there could be a conspiracy claim between agencies within the Department of Defense, which is doubtful.

13

failure to promote claim by the District of Columbia would preclude further litigation of the claim in this district. For that reason, Mrs. Webster's failure to promote claim is properly dismissed without prejudice such that these claims can be presented in the District of Columbia to the court considering the first of the claims filed.

*　　*　　*

For the reasons set forth above, plaintiffs' complaint must be dismissed in its entirety. An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record and to plaintiffs at their address of record.

Alexandria, Virginia
February 28, 2020

_____
T. S. Ellis, III
United States District Judge